UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MICHELE TILLERY,

                              Plaintiff,

   -against-                                        1:13-CV-1528 (LEK/RFT)

NYS OFFICE OF ALCOHOL AND
SUBSTANCE ABUSE SERVICES, *et al.*,

                              Defendants.

_____

## **MEMORANDUM-DECISION and ORDER**

**I.    INTRODUCTION**

       This matter comes before the Court, following its transfer from the Southern District of New York, on a Motion to dismiss. Dkt. Nos. 14 ("Motion"); 28 ("Order"). Plaintiff Michele Tillery ("Plaintiff") filed this employment discrimination action against Defendants Laurie Felter ("Felter"), Stephen Mantor ("Mantor"), Michael Lawler ("Lawler") (together, the "Individual Defendants") and the New York State Office of Alcohol and Substance Abuse Services ("OASAS") (collectively with the Individual Defendants, "Defendants"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the New York State Human Rights Law ("HRL"), N.Y. EXEC. LAW § 290 et seq. Dkt. No. 1 ("Complaint"). For the following reasons, Defendants' Motion is granted in part and denied in part.

## II. BACKGROUND[1]

Plaintiff has been a New York state employee for 24 years. Am. Compl. ¶ 6.[2] Since May 2005, Plaintiff has worked for the OASAS Bureau of Capital Management ("Bureau") as a Facilities Planner 2 ("FP2"). Id. ¶¶ 8-10. FP2s in the Bureau are assigned to one of two "houses": the Facilities Evaluation and Inspection Unit ("FEIU") house or the Capital house. Id. ¶ 12. Plaintiff and all other African-American FP2s work in the FEIU house; the Capital house consists entirely of white male employees. Id. Most of the Capital house work is concentrated in New York City and the lower Hudson Valley, where Plaintiff and the other African-American FP2s live and work. Id. ¶ 21. However, most of the Capital house employees live and work out of the Albany and Buffalo field offices and require reimbursement when they travel to site locations for work. Id. Plaintiff has never been assigned duties consistent with the civil service description for the FP2 position. Id.

Plaintiff applied for promotions, both in the Capital house and in other state agencies, and was passed over. In 2006 and 2010, Felter, an OASAS supervisor, declined to promote Plaintiff and instead hired two individuals who had not previously held the title of either Facilities Planner 1 ("FP1")[3] or FP2. Id. ¶ 16. In April 2010, Plaintiff told Mantor, the FEIU house supervisor, that she

---

[1] Along with her Response, Plaintiff submitted an Amended Complaint. Am. Compl. Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), a party may amend her pleadings once as a matter of course within 21 days of being served with a 12(b) motion. Additionally, on a 12(b)(6) motion to dismiss, the Court accepts all of the plaintiff's factual allegations as true, and resolves all inferences in her favor. See Tellabs, Inc. v. Makor Issues & Rights, Inc., 551 U.S. 308, 309 (2007). Thus, the allegations in the Amended Complaint form the sole basis for this section.

[2] Citations to paragraphs in the Amended Complaint refer to the "Facts of the Case" section. Am. Compl. at 6-24. Citations to the remainder of the Amended Complaint refer to the page number.

[3] Although not explicitly stated by Plaintiff, the FP1 appears to be a lesser title than the FP2.

2

was interested in an available position and submitted an application to human resources.  Id. ¶ 18.
Mantor told Plaintiff that he would expand the geographic coverage area for the position to include
Long Island if she continued to seek the job.  Id.  In October 2010, Plaintiff and Mark Lyman
("Lyman"), a white, male FP1, applied for two open positions in the Capital house.  Id. ¶ 25.
Neither was selected; one position was filled with a white male from another state agency who had
not previously worked as an FP1 or FP2, and the other was left vacant.  Id.

Lyman filed an internal complaint of creed-based discrimination on March 4, 2011.  Id. ¶¶ 26-27.  The complaint sparked an investigation into Plaintiff's informal complaints of discrimination on the basis of race; Plaintiff was interviewed during the course of the investigation. Id. ¶¶ 28-30.  Plaintiff alleges that human resources erred in not conducting separate investigations of the two complaints; she and Lyman did not intend to combine them.  Id. ¶ 30.  In its response to Lyman's complaint, OASAS stated that the promotion would have transferred Plaintiff to the New York City office, which did not have an on-site supervisor, and that Plaintiff was not "capable of managing" that responsibility yet.  Id.

Plaintiff alleges that her actions then came under greater scrutiny and her workload reduced. On March 8, 2011, Mantor took Plaintiff into a counseling session and questioned her about the amount of time she had spent on an inspection the previous Friday.  Id. ¶ 50.  Over the next several months, Mantor and Felter held several additional sessions with Plaintiff, questioning her about previous timesheets and inspection itineraries and accusing her of "stealing time."  Id. ¶¶ 51-60.  On March 11, 2011, Felter reduced the frequency of outpatient-facilities inspections from annual inspections to biannual inspections for all members of the FEIU house.  Id. ¶ 71.  Felter then reassigned inspection areas for which each FEIU house employee was responsible.  Id. ¶¶ 73-74.

Plaintiff was the only inspector that received a catchment area corresponding to less than a field office. Id. ¶ 74. The FP1 who split some of the facilities from the Mid Hudson field office with Plaintiff was assigned 300 facilities, while Plaintiff was assigned 150. Id. This reduction in field work caused Plaintiff to make additional commutes to Albany and to take time off work. Id.

In April 2011, FEIU house management instituted a policy requiring employees to call the central office after finishing each inspection so that their time could be recorded. Id. ¶ 83. Plaintiff and Lyman filed union grievances, alleging that the new policy violated the collective bargaining agreement ("CBA"), which provided that employees would not be required to punch a time clock or record attendance. Id. ¶ 84. Although Plaintiff's grievance was denied, the policy was subsequently changed to require inspectors to simply record the time that they arrive and leave the inspection site. Id. ¶¶ 86-87. Plaintiff attributes this change to a secret grant of Lyman's grievance. Id. ¶ 87.

Defendants also stopped recognizing Plaintiff's 2005 medical accommodation, which allowed Plaintiff to use her personal vehicle or a larger rental car instead of an agency vehicle for official business. Id. ¶¶ 88-90. In March and July 2011, Mantor denied Plaintiff's requests for reimbursement for the use of her own vehicle. Id. ¶¶ 91-94. On July 19, 2012, Plaintiff requested leave to go home early, because she was sick and needed rest. Mantor offered Plaintiff a "side deal" to allow the request if Plaintiff agreed to take only half time pay. Id. ¶ 97. Plaintiff refused the request, and Mantor stopped signing Plaintiff's timesheets. Id. ¶¶ 97-98. Mantor also sent Plaintiff an email informing Plaintiff that she would be formally disciplined and that a new travel policy would be instituted for her. Id. ¶ 98. On August 7, 2012, Mantor and Felter refused to sign Plaintiff's timesheet and told Plaintiff that they would sign the timesheet only if Plaintiff charged 2.25 hours against her personal time accruals. Id. ¶ 100. Plaintiff refused, and Mantor responded by

4

sending Plaintiff an email stating that he would withhold Plaintiff's paycheck if she did not charge 2.75 hours of accrued personal time instead. Id. ¶ 102. Mantor also began to accuse Plaintiff of abusing the travel policy in a manner such that other employees could hear. Id. ¶ 101. Plaintiff was out of work between August 17 and August 26, 2012.[4] Id. ¶¶ 102-03. When Plaintiff returned to work, Felter ordered Plaintiff to mark the days that she was out of the office as unscheduled absences. Id. ¶ 103.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in March 2012. Id. ¶ 36. The complaint alleged both race and sex discrimination. Id. ¶ 36. Plaintiff received a right to sue letter in October 2012. Id. ¶ 38. She then commenced this action in January 2013, filing her original Complaint in the Southern District of New York. Compl. Defendants then filed their Motion to dismiss; Plaintiff filed a Response and an Amended Complaint. Mot.; Dkt. Nos. 18 ("Response"); 19 ("Amended Complaint"). Defendants filed a Reply. Dkt. No. 21 ("Reply"). The Honorable Colleen McMahon, United States District Judge, transferred the case to the Northern District of New York, denied the portion of the Motion seeking dismissal due to improper venue as moot, and declined to reach the remainder of the Motion seeking dismissal for failure to state a claim.[5] Order.

### III. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

---

[4] It is unclear from the Amended Complaint why Plaintiff was out of work during that period. See generally Am. Compl. As best the Court can discern, Plaintiff seems either to have been sick and calling into work each day or using some kind of separate call-in time. See id. ¶¶ 102-04.

[5] During briefing, Plaintiff also filed a Motion for leave to file a surreply brief, which Judge McMahon denied. Dkt. Nos. 24-26.

5

Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6). Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556. "[U]nadorned, the-defendant-unlawfully-harmed-me accusation[s]" do not suffice. Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Thus, although a court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff, see Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006), an action is subject to dismissal where the court is unable to infer more than the "sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

## IV.  DISCUSSION

Defendants seek partial dismissal of Plaintiff's claims. See generally Mem. at 9-16. In particular, Defendants argue that: (1) all Title VII allegations against the Individual Defendants fail to state a claim, and all HRL claims against Felter and Mantor fail to state a claim because they are not employers; (2) Plaintiff's retaliation claim fails to state a claim because she neither engaged in protected activity nor suffered adverse employment action; and (3) Plaintiff's HRL claims are barred by sovereign immunity against the state.[6] Id.

---

[6] Defendants also include in the Reply a one-paragraph section arguing that Plaintiff's Title VII claims arising before June 2011 are time-barred. Reply at 10. This argument was not raised in their initial Motion. See generally Mem. Arguments raised for the first time in reply papers need not be considered. See United States v. Yousef, 327 F.3d 56, 115 (2d Cir. 2003); Nuss v. Sabad, No. 10-CV-0279, 2013 WL 5493899, at *10 n.5 (N.D.N.Y. Sept. 30, 2013) (Kahn, J.) ("The Court need not consider issues raised for the first time in a party's reply brief."). Even though Plaintiff filed an Amended Complaint, Defendants pressed that the arguments raised in their Motion and

6

### A. Claims against Individual Defendants

Defendants assert that claims against the Individual Defendants are improper under Title VII, and claims against Mantor and Felter are improper under the HRL. Mem. at 13-17. "Though an individual defendant with supervisory control cannot be personally liable under Title VII, an individual supervisor may be liable under the [HRL] . . . if he 'actually participates in the conduct giving rise to a discrimination claim.'" Pryor v. Jaffe & Asher, LLP, No. 13 Civ. 4558, 2014 WL 144644, at *3 (S.D.N.Y. Jan. 15, 2014) (quoting Tomka v. Seiler Corp., 66 F.3d 1295, 1313, 1317 (2d Cir. 1995)); see also Feingold v. New York, 366 F.3d 138, 158 (2d Cir. 2004). Plaintiff has alleged the personal involvement of Mantor and Felter in her discrimination claim. See, e.g., Am. Compl. ¶ 3. Accordingly, Plaintiff's Title VII claims against the Individual Defendants are dismissed, and her HRL claims against the Individual Defendants may proceed.

---

Memorandum were still applicable to the Amended Complaint instead of filing a new motion. See generally Reply. As a result, Plaintiff was denied the opportunity to file a surreply brief. Dkt. Nos. 25-26. Moreover, both the Complaint and the Amended Complaint asserted adverse actions occurring before June 2011. Compl.; Am. Compl. Because the timeliness of an EEOC charge of discrimination is not jurisdictional, Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000) ("[A] Title VII claim to the EEOC 'is not a jurisdictional [prerequisite], but only a precondition to bringing a Title VII action that can be waived by the parties or the court.'" (quoting Pietras v. Bd. of Fire Comm'rs of Farmingville Fire Dist., 180 F.3d 468 (2d Cir. 1999))), and because Defendants had adequate opportunity to raise the argument in their initial Memorandum, the Court declines to consider the argument here.

    Additionally, it is not clear-cut which adverse actions will be timely and relevant to this action. Construing the Amended Complaint liberally, see Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008), it raises several theories of discrimination under Title VII, including failure to promote, retaliation, and, notably, hostile work environment. A hostile work environment claim allows consideration of adverse actions not otherwise timely raised in an EEOC charge as long as the hostile environment continued into the limitations period. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002) (allowing events beyond the filing window to be claimed because the alleged discrimination "is composed of a series of separate acts that collectively constitute one unlawful employment practice"). Because Plaintiff's request to file a surreply brief was denied, this issue was not briefed and the Court declines to consider which actions could be potentially barred by the limitations period.

**B. Retaliation**

A Title VII claim for retaliation requires a plaintiff to show that: "(1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." Summa v. Hofstra Univ., 708 F.3d 115, 125 (2d Cir. 2013) (citing Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 608 (2d Cir. 2006)).

*1. Protected Activity*

Defendants argue that Plaintiff's mere participation in Mark Lyman's internal complaint for discrimination does not constitute protected because Plaintiff was not mentioned by name in the complaint and she did not file her own charge. That is incorrect. "The law protects employees in the filing of formal charges of discrimination as well as in the making of informal protests of discrimination, including making complaints to management." Summa, 708 F.3d at 126-27; Matima v. Celli, 228 F.3d 68, 78-79 (2d Cir. 2000). Plaintiff alleges that she, at minimum, participated in the investigation into Mark Lyman's charge of discrimination and complained to management of discrimination against her. Am. Compl. ¶¶ 26-30. At the motion to dismiss stage, these allegations are sufficient to establish that Plaintiff engaged in protected activity. See, e.g., Diaz v. Conn. Light & Power Co., No. 13-CV-0775, 2014 WL 943122, at *2 (D. Conn. Mar. 10, 2014) (citing Schiano, 445 F.3d at 608).

*2. Adverse Action*

In order to state a claim under Title VII, a plaintiff must establish that she suffered an "adverse" employment action. Terry v. Ashcroft, 336 F.3d 128, 137-38 (2d Cir. 2003). "An adverse employment action is one [that] is more disruptive than a mere inconvenience or an

alteration of job responsibilities." Id. at 138 (internal quotation marks omitted). Potential adverse employment actions include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Patrolmen's Benevolent Ass'n v. City of New York, 310 F.3d 43, 51 (2d Cir. 2002). On the other hand, adverse actions giving rise to Title VII retaliation claims need not be directly tied to the plaintiff's terms of employment; rather, the standard is whether "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).

Plaintiff's allegations are sufficient to plead an adverse action. In Zelnik v. Fashion Inst. of Tech., 464 F.3d 217 (2d Cir. 2006), the Court of Appeals stated that "negative evaluation letters, express accusations of lying, assignment of lunchroom duty, reduction of class preparation periods, failure to process teacher's insurance forms, transfer from library to classroom teaching as an alleged demotion, and assignment to classroom on fifth floor which aggravated teacher's physical disabilities" qualified as potential adverse employment actions in a retaliation claim. Zelnik, 464 F.3d at 226 (citing Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999)). Plaintiff's claim closely mirrors these allegations. Plaintiff's inspection workload was reduced; she was the only FP2 not assigned to an entire field office. Am. Compl. ¶¶ 71-74. Instead, Plaintiff was forced to drive longer distances to Albany, which aggravated her disability, and was often either not allowed to use, or not reimbursed for using, her own vehicle in accordance with her disability accommodation. Id. ¶¶ 74, 88-94. Defendants began to refuse to sign Plaintiff's timesheets and requests for

reimbursement. Id. ¶¶ 51-60, 95-100. These actions would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry., 548 U.S. at 68. Accordingly, Plaintiff's retaliation claim may proceed.

### C. HRL

Defendants next argue that Plaintiff's HRL claim against OASAS is barred by New York's sovereign immunity. Mem. at 14-15. The Eleventh Amendment bars suit for damages in fedearl court against a state until that immunity is abrogated by the state or by Congress. Gollomp v. Spitzer, 568 F.3d 355, 365-66 (2d Cir. 2009). "Nothing in the HRL provides any basis for finding that New York State has waived Eleventh Amendment immunity thereunder." Pazamickas v. N.Y. Office of Mental Retardation and Dev. Disabilities, 963 F. Supp. 190, 196 (N.D.N.Y. 1997). Plaintiff argues that the states' receipt of Federal Financial Assistance connected with Title VII suffices to abrogate sovereign immunity. Resp. ¶ 40. However, Defendant correctly points out that 42 U.S.C. § 2000d-7(a)(1), which abrogates sovereign immunity for violations of *federal* anti-discrimination statutes, applies only to federal causes of action rather than suits arising under state law. Accordingly, Plaintiff's HRL claim against OASAS is dismissed with prejudice.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED** that Defendants' Motion (Dkt. No. 14) to dismiss is **GRANTED in part** and **DENIED in part**. Plaintiff's Title VII claims against the Individual Defendants and Plaintiff's HRL claims against OASAS are **DISMISSED**. The remainder of Plaintiff's claims may proceed; and it is further

**ORDERED** that the Clerk serve a copy of this Memorandum-Decision and Order on all

parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:	May 30, 2014
	Albany, NY

_____
Lawrence E. Kahn
U.S. District Judge